he alleges that he called Ragaglia, among others, around August and September of 2000 to complain generally about DCF. Pl. Opp. at 6. He does not indicate the precise time of such calls and does not suggest that he complained about anything unconstitutional or that should reasonably have been construed as such. Nothing therein would relate to the October 9, 2000 incident or its sequel. Although Plaintiff states that he wrote Ragaglia a letter dated October 30, 2000, to request an administrative hearing, which was later scheduled for January 22, 2001, he concedes that she was personally involved in neither the scheduling nor conduct of the hearing. Pl. Opp. at 30-31 ("none of these defendants decided the scheduling of the administrative hearing"). Such contacts do not support a conclusion of sufficient personal involvement by Ragaglia, and summary judgment on the § 1983 claims in Count Three regarding her is granted.

**b. Procedural Due Process Claim–Curran and Fritz**

Defendants argue that no Defendant had anything to do with the scheduling, continuance, or conduct of the administrative hearing.[10] Plaintiff concedes this point. Accordingly, summary

---

10 Defendants note that "the scheduling of the hearings is handled by the Hearing Officer, who is attached to the Administrative Hearings Unit of the Department of Children and Families. None of the defendants were members of that unit." Def. Mem. in Supp. of Summ. J. at 7. The Hearing Officer is not named as a defendant in this suit. Plaintiff cites no legal authority for his proposition that deferring the administrative hearing pending the resolution of criminal charges violated his constitutional rights. Moreover, Plaintiff provides no explanation why, if indeed he was harmed between February/March, 2001 (when the administrative hearing was stayed) and September, 2001 (when the pending criminal charges were resolved) and continues to be harmed, he has not requested a resumption of the hearing to have his name removed from the registry. Implicitly conceding that a hearing may be postponed until pending criminal charges are resolved, Plaintiff cites *Alfaro Motors Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987). In that case he notes "there was no due process violation for postponing the administrative hearing because the agency held a hearing after the dismissal of criminal charges against the plaintiff." Pl. Opp. at 32. Plaintiff was notified that if he wished to reactivate his hearing he could do so. Plaintiff has shown no effort to resume the hearing after the criminal charges were dismissed. He does not explain why he did not do so. Saying this was DCF's responsibility is without merit. His belief that DCF should have reactivated the hearing does not excuse his failure to seek his opportunity for its completion. Plaintiff does not establish a violation of his due process rights when its resumption was within his ability. His failure would constitute waiver of his right. Moreover, staying the administrative proceeding while criminal charges are pending prevents Plaintiff from having to potentially compromise his Fifth Amendment right to remain silent or to divulge information in the administrative hearing that may later incriminate him in the criminal proceeding.

judgment is **granted** as to Plaintiff's claims in Count Three against Curran and Fritz for violating his § 1983 Fourteenth Amendment right to procedural due process.

### c. Fourth Amendment Search and Seizure Claim--Curran and Fritz

Plaintiff alleges violation of his § 1983 right to be free from unreasonable search and seizure under the Fourth Amendment. Compl. Count Three. He apparently argues that this occurred when the police arrested him. *See* Def. Mem. in Supp. of Summ. J. at 15 (citing to Carroll Dep. at 95). No Defendant is shown to have been personally involved in the arrest. Furthermore, Plaintiff cites no legal authority to support his apparent proposition that DCF employees violate the Fourth Amendment by being part of an organization that prompted an individual's arrest.[11, 12] *See* Carroll Dep. at 94. Defendants are **granted** summary judgment on Count Three regarding Plaintiff's claim that they violated his Fourth Amendment right to be free from search and seizure.

### 2. Qualified Immunity

Qualified immunity, asserted in response to § 1983 actions, is available only to public officials who have allegedly violated an individual's federal statutory or constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995). An individual defendant sued under § 1983 is entitled to qualified immunity if it was objectively reasonable to believe that his conduct

---

11 Accordingly, such law is not clearly established and Defendants are entitled to qualified immunity.

12 Moreover, the evidence indicates that the officer found probable cause after conducting his own investigation, interviewing the child (in Curran's presence) and Plaintiff (alone). The fact that any of the Defendants set the events in motion by calling the police does mean that they violated Plaintiff's Fourth Amendment rights. The existence of probable cause, and support of Defendants' finding abuse by Plaintiff, is further found in the process by which the Trooper was authorized to arrest him, i.e. the request of a prosecutor for issuance of a warrant and a judge's determination that a warrant was justified.

did not violate a clearly established constitutional right. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). Determination of a Defendant's right to qualified immunity is a two-step inquiry. The first step requires the identification of a constitutional right violated by Defendants' conduct. *See Koch v. Brattleboro*, 287 F.3d 162, 165-66 (2d Cir. 2002). If a violation is identified, the inquiry proceeds to a determination of whether the right violated was "clearly established." *See id.* Definition of the right must be sufficiently clear to place a reasonable official on notice that his actions would violate the right. *See id.* Three factors are pertinent to determine whether a constitutional right was clearly established:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted). Defendants are shielded from liability "as long as [their] actions could reasonably have been thought consistent with the rights [they are] alleged to have violated." *Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002).

"[I]t is well settled that child protective service members are entitled to qualified immunity for their conduct during the course of abuse investigations." *Wilkinson v. Russell*, 182 F.3d 89, 99 (2d Cir. 1999). The Second Circuit

> has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context. An investigation passes constitutional muster provided simply that case workers have a reasonable basis for their findings of abuse. . . . [C]ourts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between difficult alternatives often need be made on the basis of limited or conflicting information.

*Id.* at 104-05 (internal quotations and citations omitted).

Defendants argue that qualified immunity shields them from suit because their actions were reasonable and did not violate any clearly established constitutional right of Plaintiff, regardless of whether or not the child was diagnosed with RAD.[13]

### 1. Reasonableness of Child Abuse Investigation Process

The deferential qualified immunity standard in child abuse investigations, *see Wilkinson*, 182 F.3d at 104-05, poses a threshold question of whether Defendants had a reasonable basis to suspect abuse (regardless of whether they were ultimately correct or incorrect) and conducted their investigation reasonably.

Plaintiff argues that Fritz's and Curran's actions were not objectively reasonable, "[g]iven the inconsistencies, the reports of abuse, the evidence of retaliation, the quickness of the determination of child abuse, the refusal to learn about [RAD,] and the lack of review or reporting of [the child's] history of previous allegations." Pl. Opp. at 26. He alleges that Curran's "suspect" investigation and quick conclusion that Plaintiff committed child abuse "shocks the conscience." Pl. Opp. at 26. He argues that when Curran called Fritz regarding Plaintiff's background, Fritz cast him in a negative light, did not disclose the child's past false allegations of abuse, and mentioned Plaintiff's complaints about DCF, thereby "taint[ing]" Curran and triggering a "chain reaction." Pl. Opp. at 27, 36.

Defendants contend that the child previously related incidents of corporal punishment found to be true, and that a psychologist who had examined the child before October 9, 2000 testified that in the past the child both reported accurately and lied. Def. Mem. in Supp. of Summ. J. at 8-9. Defendants note that the school nurse and emergency room physicians who

---

13 Plaintiff is not accorded *carte blanche* to dictate how to deal with a child afflicted with RAD.

examined the child did not believe his injuries were self-inflicted. Def. Mem. in Supp. of Summ. J. at 9; Def. Reply at 5. Defendants point out that although Plaintiff argues that they jumped to conclusions about the child abuse, Curran spoke with "the child, the emergency room physician who examined the child, the school nurse, the school social worker, the school principal, the DCF treatment social worker, a doctor from the child's pediatric group, the child's therapist, and the [P]laintiff and his wife, among others." Def. Reply at 4. Moreover, Plaintiff claimed to be unaware of the child's injuries. Def. Mem. in Supp. of Summ. J. at 10-11.

Plaintiff argues that Defendants retaliated against him, and that "[n]o investigation, no matter how objectively reasonable, gives a government employee license to deliberately retaliate . . . by being untruthful and not forthcoming about material information." Pl. Opp. at 25-26. He argues that "[c]ase workers cannot be free to substantiate a claim of abuse . . . by ignoring overwhelming exculpatory information or by manufacturing false evidence." *Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999). The present case does not involve "overwhelming exculpatory information" and there is no evidence that Defendants "manufactured" the visible injuries on the child or coerced or even misled the school social worker, the school nurse, and the emergency room workers to conclude that the child's injuries were suspicious and not self-inflicted. Like the present case *Wilkinson* involved "conflicting information," and the court "[found] it significant" that the evidence did not "unequivocally" suggest that the children in that case "had been coached rather than abused":

> The transcript of [the child's] interview, for instance, reveals that the child at times claimed that he had been coached by his mother, but at other times maintained that his allegations were true. . . . The evidence thus suggests that the children gave conflicting signals as to whether their father had abused them. . . . . Although [the doctor] determined that such considerations [that the children's allegations were credible] were outweighed by countervailing evidence of coaching and fabrication . . . the fact remains that [the

> doctor] was able to identify a number of significant considerations providing defendants with a basis to conclude that [the father] was guilty of abuse.

*Id.* at 105. Although there were flaws in the investigation, it was concluded that the defendants "had a reasonable basis for their substantiation determination and that they therefore did not violate plaintiffs' constitutional rights." *Id.* at 106; *see also DeRosa v. Bell*, 24 F.Supp. 2d 252, 262 (D. Conn. 1998) (finding defendants entitled to qualified immunity absent showing of "clearly inappropriate or inadequate investigative techniques").

Given the nature of the child's injuries and the multiple observations of people who observed him, it was not unreasonable to suspect and find child abuse. Plaintiff focuses on the child's diagnosis with RAD and his tendency to lie, but there was evidence that the child had been truthful about abuse in the past. As in *Wilkinson*, here the "conflicting information" did not "unequivocally" suggest that the child was lying about the October 9, 2000 incident. It would be deeply troubling to conclude that an RAD child who had lied in the past could never be believed regarding child abuse, especially when based on observed symptoms multiple people believed the child's injuries were not self-inflicted. Plaintiff argues that Curran's failure to inform the school nurse and emergency room doctors about the child's "history of false abuse allegations" precluded them from making a "credibility determination." Pl. Opp. at 28. He cites no legal authority that, under those circumstances, the child's credibility would be required to be found lacking. "The legislature has expressed the strong public policy of encouraging medical professionals and other persons to report actual and suspected child abuse to the appropriate authorities and agencies." *Zamstein v. Marvasti*, 240 Conn. 549, 559, 692 A.2d 781 (1997). Logically, this policy extends to DCF employees. Regardless of whether or not Curran and Fritz were "angry" with Plaintiff, the investigation and decision to substantiate child abuse was not

unreasonable. That decision was supported not only by the child's disclosures, but also by the child's observable injuries independently found to be consistent with the child's account. Defendants' investigation process was not shown to be unreasonable and does not "shock the conscience."

Accordingly, Defendants are **granted** summary judgment on the Count Three § 1983 claim that Defendants' actions "shock[] the conscience."[14]

### 2. Fourteenth Amendment and Plaintiff's Right to Pursue a Child Care Career

Plaintiff argues that his Fourteenth Amendment right to due process to pursue a child care career was violated because as a result of the child abuse substantiation he has been stigmatized by being placed on a child abuse registry. Compl. Count Three; Pl. Opp. at 21.

Plaintiff's relies on a claimed constitutional right to a child care career. He cites no cases to support this proposition. He further implies that inclusion on the child abuse registry deprives him of a protected liberty interest because the listing not only stigmatizes him but also it denies him employment in the child career field. *See Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1999). In *Valmonte*, the plaintiff complained about the general statutory scheme regarding a

---

14 To the extent Plaintiff argues that any of Defendants' other actions shock the conscience, his claims fail. "The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973)). "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001).

In conclusory fashion and without citing caselaw, Plaintiff contends that Defendants' actions shock the conscience because they retaliated against him and quickly decided that he committed child abuse. Pl. Opp. at 24-25. He cites no legal authority to support his claim that Defendants' actions are malicious, extreme, sadistic, or brutal and were intended only to injure him. Moreover, he fails to demonstrate that investigation and substantiation of suspected child abuse does not serve a legitimate government purpose.

child abuse registry. *Id.* at 994-95. A two-step inquiry was outlined. *Id.* at 994. First, the court must determine whether the state's maintenance of the child abuse registry "implicates a protectible liberty interest under the Fourteenth Amendment." *Id.* Second, if the answer to the first prong is yes, the court must "determine whether the state's statutory procedures established to protect the liberty interest are constitutionally adequate." *Id.*

**a. Whether Plaintiff has a Protectible Liberty Interest–"Stigma Plus"**

A plaintiff must establish "stigma plus . . . to establish a constitutional violation." *Id* at 999-1002. In other words, "loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest." *Valmonte*, 18 F.3d at 999 (citations omitted). The plaintiff was found deprived of a protected liberty interest "not simply [because the child abuse registry list] exists, or that the list is available to potential employers. . . . [but because] employers must consult the list before hiring [her]." *Id.* at 1002. Plaintiff argues that putting his name on the child abuse registry constitutes a "stigma," and the fact that future employers are likely to gain access to this information constitutes a "plus," Pl. Opp. at 23-24, a claim subject to considerable doubt as speculative.

Assuming *arguendo* that Plaintiff has established stigma plus, as discussed below he fails to establish that the procedural safeguards are insufficient.

**b. Adequacy of Procedural Safeguards**

"[E]ven though the [registry list] implicates [the plaintiff's] liberty interest, [the plaintiff] still must show that the procedural safeguards of her interest established by the state are insufficient to protect her rights." *Id.* The *Valmonte* plaintiff argued that the procedures in place violated due process "by prohibiting expungement of a subject's indicated record if there is 'any

credible evidence' to support the allegation and only holding the county [Department of Social Services] to a higher 'preponderance of the evidence' standard after a subject loses an opportunity for employment." *Id.* at 1002, 1003. She produced evidence that approximately 75% of those seeking to expunge their names from the registry were successful. *Id.* at 1004.

In contrast to *Valmonte*, Plaintiff does not argue specifically that the procedural safeguards are facially insufficient to protect his rights.[15] Instead, he contends that they were insufficient as applied to him "because [he] was not permitted to have a hearing to contest the substantiation." Pl. Opp. at 24. As discussed earlier, other than claiming that Defendants should have reactivated the hearing, Plaintiff provides no explanation as to why he did not seek to reactivate the hearing after the criminal charges were resolved as he was instructed he could do.

Plaintiff cannot claim a lack of due process when he chooses not to exhaust the process available to him either by failing to request reactivation of the hearing or seeking review in state court. "If a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991) (citing *Marino v. Ameruso*, 837 F.2d 45 (2d Cir. 1988); *Tall v. Town of Cortlandt*, 709 F. Supp. 401, 408 (S.D.N.Y. 1989)). Once the criminal proceedings were resolved, Plaintiff had been instructed

---

15 In a footnote Plaintiff vaguely hypothesizes that "the hearing which should have been provided may not have been sufficient anyway." Pl. Opp. at 24 n.9. This conclusory statement does not raise a facial challenge to the hearing procedure. Moreover, Defendants note that "if [Plaintiff] elects to reactivate his hearing and loses on the merits, then [he] would be able to raise any deficiencies in the hearing process on appeal to state court under the [Uniform Administrative Procedure Act]." Def. Reply at 8 n.8. In a letter to the administrative hearing officer dated February 15, 2001, Plaintiff's attorney stated that "since this administrative hearing is governed by Title IV of the Connecticut General Statutes, we are demanding that a record of the State's unilateral action be made so that we can pursue the appropriate remedies in Superior Court." Def. Mem. in Supp. of Summ. J. at 3 (citing Exh. G). There is no indication that Plaintiff ultimately pursued his remedies in Superior Court, and in light of such waiver Plaintiff cannot reasonably assert that the procedural safeguards are facially insufficient to protect his rights.

that he could seek to resume his administrative hearing. The fact that he did not, or that he claims the burden of reopening the hearing should fall on Defendants, does not constitute a deprivation of procedural due process. Moreover, "the administrative hearing is still available to [Plaintiff]." Def. Reply at 8 n.6.

Accordingly, summary judgment on the Count Three claim that Defendants violated his Fourteenth Amendment § 1983 rights by interfering with his ability to pursue a career in child care is **granted.**[16]

### C. Sovereign Immunity and Official Capacity Claims

Defendants argue that sovereign immunity bars Plaintiff's official capacity claims, as DCF is a state agency.

Suit in federal court against a state or one of its agencies unless the state has expressly consented to be sued, or Congress explicitly abrogates state immunity, is barred. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988) (*quoting United States v. Sherwood*, 312 U.S. 584, 586, 85 L. Ed. 1058, 61 S. Ct. 767 (1941)). Courts may not

---

16 Plaintiff's claim is flawed for other reasons. First, as discussed earlier none of the Defendants were personally involved in the deferral of the administrative hearing, so could not be found liable under § 1983. Second, Plaintiff fails to cite legal authority to support his proposition that his due process rights were violated when the administrative hearing was stayed pending the outcome of the criminal proceedings. A stay is not a denial of a hearing. Assuming *arguendo* that Defendants were personally involved, Plaintiff fails to show that the law was clearly established and accordingly Defendants would be entitled to qualified immunity.

Furthermore, if the state administrative proceeding was ongoing, as Plaintiff represented in the criminal court proceedings, the abstention doctrine might prevent this Court from considering this issue at this time. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986); *Doe v. Connecticut Dep't. of Health Servs.*, 75 F.3d 81, 84-85 (2d Cir. 1996).

broaden a limited waiver of immunity. *Id.* "[A] state cannot be sued under § 1983, and . . . this rule applies to States or governmental entities that are considered arms of the state for Eleventh Amendment purposes." *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (internal quotations and citations omitted). Connecticut is not shown to have consented to be sued under § 1983, nor has Congress abrogated Connecticut's sovereign immunity as to such claims. Plaintiff provides no contrary legal authority.

Any claims for monetary relief against Defendants in their official capacity are barred.

**D. State Constitutional Claims (Count Four)**

Count Four alleges violation of Plaintiff's rights under Article I §§ 7, 8, and 9 of the Connecticut Constitution in that Defendants (1) violated his right to due process, (2) "constituted a gross abuse of power that is shocking to the conscience," (3) impeded and continue to impede his ability to pursue a profession in child care, and (4) violated his right to be free from unreasonable searches and seizures.

Article I § 7 provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures." Article I § 8 provides that "[n]o person shall be . . . deprived of life, liberty or property without due process of law." Article I § 9 provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."

Plaintiff correctly argues that the Connecticut "constitution *may*, in certain instances, afford greater substantive due process rights than the federal constitution." *Ramos v. Vernon*, 254 Conn. 799, 836, 761 A.2d 705 (2000). However, "irrespective of whether, in certain circumstances, the due process clauses of our state constitution may provide greater protections

than federal substantive due process analysis, there is no support for the proposition that, in the circumstances relevant to this case, our state constitution affords any greater substantive due process rights than the federal constitution." *Id.* at 837. Aside from broad and conclusory allegations, Plaintiff provides no sufficient support for his proposition that the state constitution provides a remedy for his claims.[17] Plaintiff argues that *Williams v. Ragaglia,* 261 Conn. 219, 802 A.2d 778 (2001), supports his claim, but there the court noted that Article I § 10 of the Connecticut Constitution affords constitutional protection to a party's interest in his reputation. *Williams*, 261 Conn. at 233. Here, Plaintiff evokes Article I §§ 7, 8, and 9. Moreover, *Williams* is distinguishable because the case involved mootness of a license revocation, where the revocation might arise in future proceedings. Plaintiff fails to show a genuine issue of material fact as to any of his rights being violated under these provisions.

Accordingly, Defendants are **granted** summary judgment on Count Four.

**E. State Tort Claims**

**1. Intentional Infliction of Emotional Distress (Count One)**

Plaintiff alleges that Defendants' conduct constituted intentional infliction of emotional distress. Defendants respond that Plaintiff fails to allege conduct that is extreme and outrageous.

---

17 The *Ramos* court noted that "[i]n determining the scope of our state constitution's due process clauses, we have taken as a point of departure those constitutional or quasi-constitutional rights that were recognized at common law in this state prior to 1818." *Ramos*, 254 Conn. at 838 (quotation and citation omitted). Here, Plaintiff has provided no historical evidence of any constitutional or quasi-constitutional rights related to the claims he raises that were recognized at common law in this state prior to 1818. *See id.* Plaintiff has not pointed to any case indicating that the Connecticut Supreme Court provides greater protection than the federal constitution regarding the issues raised in his claims. *See id.* Given the absence of persuasive arguments by Plaintiff, it is concluded that he has failed to demonstrate that the rights he alleges are afforded greater protection by the Connecticut constitution than does the federal constitution. *See id.* at 840. Accordingly, his substantive due process claims under the Connecticut constitution fail.

Intentional infliction of emotional distress requires a plaintiff to allege (1) defendant intended to inflict emotional distress, or knew or should have known that it was a likely result of its conduct, (2) extreme and outrageous conduct, (3) the conduct caused plaintiff's distress and (4) plaintiff's emotional distress was severe. *See DeLaurentis v. New Haven*, 220 Conn. 225, 266-67, 597 A.2d 807, 827-28 (1991). "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Whitaker v. Haynes Constr. Co.*, 167 F. Supp. 2d 251, 254 (D. Conn. 2001).

The "extreme and outrageous" standard requires that the conduct "exceed[] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan v. Ellis*, 200 Conn. 243, 254 n.5, 510 A.2d 1337 (1986). It must be alleged that an average representative of the community would be aroused to anger, causing him or her to exclaim "Outrageous!" *See Carrol v. Allstate Ins. Co.*, NO. 16758, 2003 WL 312903, at *4 (D. Conn. Feb. 25, 2003) (citing 1 RESTATEMENT (SECOND), TORTS § 46, cmt (d) (1965)); *Appleton v. Board of Educ.*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* Whether conduct meets this standard requires determination by the court in the first instance. *See Collins v. Gulf Oil Corp.*, 605 F. Supp. 1519, 1522 (D. Conn. 1985). If reasonable people may differ as to whether the conduct is extreme or outrageous, the question is one for the jury. *See Appleton*, 254 Conn. at 210. Connecticut state courts and "federal district courts in the Second Circuit have interpreted the qualification of extreme and outrageous strictly." *Whitaker*, 167 F. Supp. 2d at 255 (citing cases illustrating what is and is not extreme and outrageous conduct).

Plaintiff argues that

> [b]eing retaliated against for complaining, being 'substantiated' as a perpetrator of abuse, having your name put on a child abuse registry, and getting arrested because of someone's refusal to disclose all relevant information, could hardly be considered the 'rough and tumble of everyday life.'

Pl. Opp. at 35. However, as discussed above, Fritz and Curran did not act unreasonably in the investigation process, and Curran's decision to substantiate child abuse was not unreasonable given the visible marks on the child and the observations of multiple people.[18] As a matter of law, under the circumstances, Defendants did not act extremely or outrageously. In addition, although Plaintiff contends that having his name on the child registry list constitutes intentional infliction of emotional distress, he has not availed himself of the opportunity to attempt to have his name removed from the list. Because his name being put on the list flows from his being substantiated for having committed child abuse, a determination which is found to be reasonable, Defendants cannot be found to have committed intentional infliction of emotional distress because Plaintiff's name was put on the list.[19] As discussed earlier, although Plaintiff believes that Defendants failed to give the police officer thorough information, the officer conducted his own investigation and found probable cause to arrest Plaintiff. Defendants' providing information to the police of suspected child abuse cannot be considered extreme and outrageous conduct, and Plaintiff cites no legal authority to the contrary.

---

18 Plaintiff repeats in conclusory fashion that Defendants retaliated against him because he had previously complained about DCF. However, his allegations that Defendants were angry with him does not eviscerate the reasonableness of their investigation. Nor does he offer any proof of his conclusory allegation of retaliatory motive.

19 As discussed above, Plaintiff concedes that none of the Defendants were responsible for scheduling the hearing to appeal his name being on the list, and accordingly cannot be found to have behaved extremely and outrageously in connection with this claim.

Because Plaintiff fails to demonstrate that Defendants' behavior was extreme and outrageous, Defendants are **granted** summary judgment on Count One.

**2. Abuse of Process and Vexatious Litigation (Count Two)**

Count Two alleges that Defendants' actions constituted an abuse of process and vexatious litigation.[20] Plaintiff bases this claim on the theory that "[D]efendants maliciously caused [him] to be arrested by the police." Pl. Opp. at 36.

**a. Vexatious Litigation**

"To establish [vexatious litigation], it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor." *Vandersluis v. Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978) (citations omitted). "Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for prosecuting an action." *Paranto v. Ball*, 132 Conn. 568, 571, 46 A.2d 6 (1946). Malice may be inferred from lack of probable cause. *Zenik v. O'Brien*, 137 Conn. 592, 596-97, 79 A.2d 769 (1951). "The existence of probable cause is an absolute protection . . . and what facts, and whether particular facts, constitute probable cause is always a question of law." *Zeller v. Consolini*, 59 Conn. App. 545, 555, 758 A.2d 376 (2000) (citation and quotation omitted).

Plaintiff argues that (1) the underlying criminal action was resolved in his favor; (2) there was no probable cause to arrest him; (3) Defendants acted with malice. He alleges that Curran called the police without conducting an adequate investigation beforehand, and that she failed to

---

[20] In his opposition brief, Plaintiff for the first time asserts a claim of malicious prosecution. Because this claim was not alleged in the complaint it is not properly before the Court, although Plaintiff's argument is confusing because he seems to premise his vexatious litigation claim on an underlying criminal action. "A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint." *Vandersluis v. Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978).

inform the police of the child's "history or previous false allegations of child abuse." Pl. Opp. at 36. He contends that her call to the police and her providing of "partial information" was the "proximate and efficient cause of Plaintiff's arrest." Pl. Opp. at 36. Assuming *arguendo* that Curran's actions were a proximate cause of Plaintiff's arrest, his claim fails because he fails to show lack of probable cause. In light of all the evidence and the child's history, which included some verified truthfulness, it was not unreasonable for Defendant Curran to believe that the child suffered abuse. The child's history of sometimes lying does not negate the visible injuries or his ability to be truthful, which support a finding of probable cause.[21] Accordingly Plaintiff's claim for vexatious litigation fails.

**b. Abuse of Process**

Under Connecticut law, an action for abuse of process lies against any person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Mozzochi v. Beck*, 204 Conn. 490, 529 A.2d 171, 173 (1987). Regardless of motive, a party does not abuse the legal process merely by filing suit. *See id.* at 173-74. "Rather, liability for abuse of process lies only when the offending party overtly misuses the process once the proceeding has begun." *Doctor's Assocs. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (citing *Mozzochi*, 204 Conn. at 174). It is unclear on what basis Plaintiff alleges that Defendants' actions constitute abuse of process. Plaintiff brought the civil suit. The police, after finding probable cause, triggered the criminal proceedings. Plaintiff does not allege that anything improper by Defendants abused the legal process after his arrest. To any extent that Plaintiff alleges Defendants' liability as part of DCF, this claim lacks merit.

---

21 Moreover, as noted above the police officer, a prosecutor, and a judge found probable cause to arrest Plaintiff after the officer conducted an independent investigation, which included interviewing the child and Plaintiff.

Summary judgment is **granted** on Count Two.

**3. Slander, Libel, and Defamation (Count Five)**

Count Five alleges Plaintiff was slandered, libeled, and defamed by Defendants. Plaintiff claims that he has "raised material issues of fact concerning Ms. Fritz's discussion of [him] in front of others as found in her deposition, and her motivations for doing so." Pl. Opp. at 37.

Defamation consists of libel (written defamation) and slander (spoken defamation). *DeVito v. Schwartz*, 66 Conn. App. 228, 234, 784 A.2d 376 (2001). Liability for defamation requires that plaintiff establish that defendants (1) published false statements (2) that harmed plaintiff, and (3) that the defendants were not privileged to do so. *Kelley v. Bonney*, 221 Conn. 549, 563, 606 A.2d 693 (1992). "To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 795-96, 734 A.2d 112 (citing *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 230 (2d Cir. 1985) (no liability where restaurant review conveyed author's opinion rather than literal fact); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977) ("[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be").

To any extent that Plaintiff's claim is based on Curran's substantiation of abuse, it fails. Pursuant to CONN. GEN. STAT. § 17a-101k, a substantiation determination is confidential and is not available to the general public. Therefore there is no publication.

Pursuant to CONN. GEN. STAT. § 4-165, "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." As discussed above, it was not unreasonable for Defendants to suspect and substantiate child abuse in this case. Pursuant to CONN. GEN. STAT. §

17a-101(a), DCF employees are mandated to investigate reports of suspected child abuse. DCF employees as mandated reporters. CONN. GEN. STAT. § 17a-101(b). The child's evident injuries, observed by a school nurse and emergency room worker, along with the child's statements, provided a reasonable basis to suspect and substantiate child abuse. Accordingly, the substantiation cannot be considered an act of defamation, even if it were ultimately found that Plaintiff did not commit child abuse.

To the extent Plaintiff claims that Defendant Fritz defamed him, his claim is conclusory and he cites to no specific evidence to support his claim. He merely states that

> Ms. Fritz went as far as to threaten someone with taking her child away if that person allowed Bobby to contact [Plaintiff] in any way. Ms. Fritz disclosed to another the circumstances surrounding his substantiation of abuse, and a jury could infer that she told that person about the substantiation of child abuse–a "substantiation" which is false. Because there are issues of material fact in dispute regarding the truth to the substantiation and [Defendants'] publishing of the substantiation, summary judgment should be denied.

Pl. Opp. at 37-38. It is not enough to summarily proclaim that there is a genuine issue of material fact to preclude summary judgment. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[A] district court is not required to scour the record looking for factual disputes. . . . A court need not make the lawyer's case.") (internal citation and quotation omitted). Moreover, although Plaintiff vaguely contends that Fritz wrongfully disclosed the substantiation to an unidentified "other," he fails to demonstrate any harm that was caused.

Defendants are **granted** summary judgment on Count Five.

### F. Injunctive Relief

Plaintiff seeks injunctive relief ordering Defendants to expunge all DCF records regarding the October 9, 2001 incident. Pl. Opp. at 19.

Generally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 515, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). However, the *Patsy* holding does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right allegedly denied. *Narumanchi v. Bd. of Trustees of Conn. St. Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (affirming the dismissal of a tenured teacher's Fourteenth Amendment procedural due process claim because the teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement, after he was suspended without pay); *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir. 1983) (per curiam) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "having chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process")). Here, Plaintiff claims that he sought to appeal through the administrative process, but that Defendants unilaterally stayed the process while the criminal proceedings were pending. He contends that Defendants were responsible to resume his administrative appeal. Regardless of whether Plaintiff or Defendants should have re-initiated the administrative process, Plaintiff had notice that he could have done so.[22] To date he has not

---

22 As noted above, Plaintiff's attorney acknowledged that "since this administrative hearing is governed by Title IV of the Connecticut General Statutes, we are demanding that a record of the State's unilateral action be made so that we can pursue the appropriate remedies in Superior Court." Def. Mem. in Supp. of Summ. J. at 3 (citing Exh. G). The substantiation hearings are governed by the Uniform Administrative Procedure Act ("UAPA"). "The procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." *Pet v. Dept. of Health Servs.*, 228 Conn. 651, 661, 638 A.2d 6 (1994). Pursuant to the UAPA, "[e]ach agency shall proceed with reasonable dispatch to conclude any matter pending before it." CONN. GEN. STAT. § 4-180(a). "If any agency fails to [proceed with reasonable dispatch] in any contested case, any party thereto may apply to the superior court [for relief]." CONN. GEN. STAT. § 4-180(b). Plaintiff was clearly aware of his right to pursue his claims in Superior Court, and in light of such waiver Plaintiff is not entitled to an injunction entered by this Court.

availed himself of that opportunity and thus cannot fault Defendants for a deprivation he could have avoided.[23]

Therefore, Defendants are **granted** summary judgment on Plaintiff's claim for injunctive relief seeking to have his name expunged from the registry.

## IV. Conclusion

For the reasons discussed herein, Defendants' motion for summary judgment [Doc. No. 40] is **granted**. The clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, November 22, 2003.

Peter C. Dorsey
United States District Judge

[23] Moreover, Plaintiff concedes that Defendants were not personally involved in the decision to stay the proceedings.